IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| NICHOLAS DeFOSSETT, | ) |
| | ) |
|     Plaintiff, | ) |
| | )   CIVIL ACTION |
| vs. | ) |
| | )   FILE No. 5:19-cv-282 |
| ALI BABA INTERNATIONAL FOOD | ) |
| MARKET, INC., and SYRAN, LLC, | ) |
| | ) |
|     Defendants. | ) |

## CONSENT DECREE

This Consent Decree (this "Agreement") is made and entered into by and between Nicholas DeFossett referred to in this Agreement as ("Plaintiff") and ALI BABA INTERNATIONAL FOOD MARKET, INC., and SYRAN, LLC ("Defendants"). The signatories to this Agreement will be referred to jointly as the "Parties." This Agreement is made as a compromise between the Parties for the complete and final settlement of their claims, differences, and causes of action with respect to the dispute described below.

## Preamble

**WHEREAS**, on or about March 19, 2019, Plaintiff filed an action in the United States District Court for the Western District of Texas, entitled *Nicholas DeFossett v. Ali Baba International Food Market, Inc., and Syran, LLC,* Case No: 5:19-cv-282 (the "Action"), wherein Plaintiff asserted claims for injunctive relief against Defendants based upon purported violations of Title III of the Americans with Disabilities Act, 42 U.S.C. 12181, *et seq*. ("ADA") and related claims for relief respecting the real property located at or about 9307 Wurzbach Road, San Antonio, TX 78240, Bexar County Property Appraiser's Parcel ID: 542168 (the "Facility");

**WHEREAS**, the Parties desire to compromise and fully and finally resolve and settle all actual and potential claims or litigation between them, to avoid the uncertainty, time and expense that would accompany such litigation;

**WHEREAS**, the Parties have agreed to enter into this Agreement pursuant to which each and every claim and/or cause of action asserted or that could have been asserted by Plaintiff against Defendants shall be fully, forever, and finally released; and

**NOW, THEREFORE**, in consideration of the covenants and mutual

1

promises and agreements contained herein, and other valuable consideration, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

**1.      Attorney's Fees and Costs**

     1.1     Plaintiff and Defendants shall execute this Agreement and Plaintiff's counsel, Dennis R. Kurz, Esq., Kurz Law Group, LLC, 1640 Powers Ferry Road, SE, Building 17, Suite 200, Marietta, GA 30067 shall prepare a Joint Stipulation to Approve Consent Decree and Dismissal of Defendants with Prejudice to be distributed to all Parties for execution. Defendants agrees to pay a total settlement amount of **$3,950.00** comprising of attorney's fees and costs of $3,950 and a reinspection fee of $300.00 (the "Settlement Payment"). All payments shall be made payable to "**Kurz Law Group, LLC Trust Account**," with an indication that the check is issued "in settlement of Case No. 5:19-cv-282.

     1.2     Upon delivery to Plaintiff's Counsel of the fully executed Agreement and payment due with the executed Agreement referenced in 1.1 above Plaintiff shall promptly file the Joint Stipulation to Approve Consent Decree and Dismissal of Defendants with Prejudice, attaching a copy of the fully executed Agreement and proposed order of dismissal with prejudice.

     1.3     Plaintiff agrees to take any and all additional steps required to obtain dismissal of the Action as set forth above.  Except as set forth herein, each Party shall be responsible for payment of his or its own litigation expenses, costs and attorneys' fees.

     1.4     Plaintiff and Plaintiff's Counsel acknowledge and agree that they are solely and entirely responsible for the payment and discharge of all federal, state, and local taxes, if any, that may, at any time, be found to be due upon or as a result of the Payment hereunder. Plaintiff and Plaintiff's Counsel, and each of them, expressly acknowledge that Defendants have not made any representations regarding the tax consequences of any Payment received pursuant to this Agreement.

**2.      Alterations or Modifications to the Facilities**

     2.1     The Parties hereto acknowledge and stipulate that Defendants shall modify or alter the items expressly identified by and in the manner specified in Exhibit "A." The repairs or modifications identified in Exhibit "A" shall be completed in all respects no later than six (6) months from the effective date of the execution of this Agreement, which shall be the date indicated by the last signatory to the Agreement.  The time period for Completion by Defendants shall be subject to acts of God, force majeure, or events beyond the control of Defendants, such as inability to obtain building or zoning permits, failure of the city/county or state inspectors to make inspections, city/county/state work on adjacent roadways/sidewalks which delay implementation of this Agreement, contractor defaults or work stoppages. In the event of such unforeseen

circumstances, the time period for completion of the alterations or modifications in Exhibit "A" shall be extended by the number of days reasonably attributable to such delay-causing event as long as Defendants provide notice to Plaintiff's Counsel prior to the original completion date set forth above.

      2.2    Upon completion of the removal of the barriers and the alterations and modifications set forth in Exhibit "A", Defendants shall provide written notice by certified or registered mail or via e-mail to Plaintiff's Counsel.

      2.3    Right to Inspection: The Parties stipulate that after Plaintiff's Counsel receives notice of the completion of the alterations or modifications described in Exhibit "A" or after the elapse of the six (6) month time period set forth in Section 2.1 above, whichever is sooner, Plaintiff may inspect the Facility to ensure that Defendants have completed the repairs or modifications described in Exhibit "A." Defendants shall provide Plaintiff or their representative reasonable access to the Facility to verify completion of the work described in Exhibit "A."

      2.4    If an inspection contemplated herein reveals that any of the alterations or modifications described in Exhibit "A" have not been performed in a manner that does not materially comply with Exhibit "A," Plaintiff shall have the right to enforce this Agreement pursuant to Section 3.1.

      2.5    It is agreed by all parties that if and upon all of the above modifications being completed as set forth in Exhibit "A," the Facility will be fully compliant with the ADA pursuant to the readily achievable standard.

**3.**    **<u>Enforcement Provisions</u>**

      3.1    In the event the alterations and modifications described in Exhibit "A" are not completed in the manner and time frame set forth in this Agreement, Plaintiff shall be entitled to file an action to obtain specific performance against Defendants or otherwise enforce the requirements of this Agreement. In any action to enforce this Agreement, the parties agree Defendants' failure to timely modify the property pursuant to Section 2.1 above is a material breach of the Agreement.

**4.**    **<u>Compromise</u>**

      4.1    The Parties agree and acknowledge that this Agreement is the result of a compromise and shall never be construed as an admission of any liability, wrongdoing, or responsibility on the part of the Released Parties (as defined in Section 5.1 below). The Released Parties expressly deny any such liability, wrongdoing, or responsibility.

**5.**    **<u>Mutual Release</u>**

      5.1    In exchange for the good and valuable consideration set forth herein

the sufficiency of which is hereby acknowledged, the Parties hereto mutually release each other, or through their corporate capacity, agents, employees, family members, partners, successors, assigns, and heirs, along with anyone claiming by or through them, jointly and severally (collectively the "Releasing Parties") hereby release, acquit, satisfy and discharge the other, and along with any and all of their predecessors, agents, employees, assigns, heirs, officers, directors, shareholders, members, affiliated entities, and any entity or person related to them, jointly and severally, (hereinafter the "Released Parties") from any and all claims, demands, liabilities, debts, judgments, damages, expenses, actions, causes of action or suits of any kind which the Releasing Parties may have, may have had, or may hereafter raise against the Released Parties, including but not limited to this subject litigation arising under Title III of the ADA including all claims by the Releasing Parties for attorneys' fees and costs, expert fees, litigation expenses, or any other amount, fee, and/or cost, with the exception of the attorneys' fees and costs required to be paid by the Defendants pursuant to Paragraph 1 of this Agreement and any attorney's fees and costs incurred in the any future enforcement of this Agreement.  This Release is strictly limited to the Facility.

       5.2    As a material inducement for Defendants to enter into this Agreement, Plaintiff represents and warrants that he is not aware of any pending tort, contract, or other legal claims against Defendants, other than the specific claims brought in this Action under Title III of the ADA, which are released under this Agreement.

       5.3    Plaintiff represents and warrants that no portion of any of the matters released by this Agreement and no portion of any recovery or settlement to which they might be entitled have been assigned or transferred to any other person, firm, or corporation not a Party to this Agreement, in any manner, including by way of subrogation or operation of law or otherwise.

## 6.    Notice

       6.1    Unless otherwise provided in this Agreement or by law, all notices or other communications required or permitted by this Agreement or by law to be served on or delivered to any Party to this Agreement shall be delivered as follows:

Defendants:
**ALI BABA INTERNATIONAL FOOD MARKET, INC.**
c/o Richard R. Crow, Jr. Esq.
TX Bar No. 24044736
Crow Law Firm, PLLC
11610 Vance Jackson #518
San Antonio, TX 78230
rick@crowlawtexas.com

**SYRAN, LLC**

c/o Richard R. Crow, Jr. Esq.
TX Bar No. 24044736
Crow Law Firm, PLLC
11610 Vance Jackson #518
San Antonio, TX 78230
rick@crowlawtexas.com

Plaintiff:
**NICHOLAS DeFOSSETT**

C/O
Dennis R. Kurz, Esq.
TX Bar No. 24068183
Kurz Law Group, LLC
1640 Powers Ferry Road, SE
Building 17, Suite 200
Marietta, GA 30067
dennis@kurzlawgroup.com

6.2    A Party may change such address for the purpose of this paragraph by giving timely written notice of such change to all other Parties to this Agreement in the manner provided in this paragraph.

**7.    Free Will**

7.1    The Parties acknowledge that each has had an opportunity to consult with counsel of their own choosing concerning the meaning, import, and legal significance of this Agreement, and that each has done so to the extent desired. In addition, the Parties acknowledge that they each have read this Agreement, as signified by their signatures hereto, and are voluntarily executing the same after having had the opportunity to seek the advice of counsel for the purposes and consideration herein expressed.

**8.    Miscellaneous Terms and Conditions**

8.1    This Agreement contains the complete settlement agreement between the Parties. Any and all prior agreements, representations, negotiations, and understandings between the Parties, oral or written, express or implied, with respect to the subject matter hereof are hereby superseded and merged herein.

8.2    This Agreement may be executed in counterparts or by copies transmitted by facsimile or email, all of which shall be given the same force and effect as the original.

8.3     This Agreement may be modified only by a written document signed by all of the Parties.  No waiver of this Agreement or of any of the promises, obligations, terms, or conditions hereof shall be valid unless it is written and signed by the Party against whom the waiver is to be enforced.

8.4     This Agreement shall be binding upon the Parties hereto, their predecessors, successors, parents, subsidiaries, affiliates, assigns, agents, directors, attorneys, officers, families, heirs, spouses, and employees.

8.5     If any provision of this Agreement shall be finally determined to be invalid or unenforceable under applicable law by a court of competent jurisdiction, that part shall be ineffective to the extent of such invalidity or unenforceability only, without in any way affecting the remaining parts of said provision or the remaining provisions of this Agreement.

8.6     The Parties acknowledge that they have reviewed this Agreement in its entirety and have had a full opportunity to negotiate its terms, and therefore waive all applicable rules of construction that any provision of this Agreement should be construed against its drafter and agree that all provisions of the Agreement shall be construed as a whole, according to the fair meaning of the language used.

8.7     Plaintiff represents that, other than the Action, he has not filed or authorized the filing of any complaints, charges, or lawsuits against Defendant with any federal, state, or local court, governmental agency, or administrative agency relating to the subject Facilities, and that if, unbeknownst to Plaintiff, such a complaint, charge, or lawsuit has been filed on his behalf, he or it will use his or its best efforts to cause it immediately to be withdrawn and dismissed with prejudice.

8.8     The parties and their Counsel agree to execute any and all further documents and perform any and all further acts reasonably necessary or useful in carrying out the provisions and purposes of this Agreement.

8.9     In any action or other proceeding to enforce rights under this Agreement, the prevailing Party shall recover from the losing party all attorneys' fees, litigation expenses, and costs.

8.10    The Parties agree that any ambiguities in this Agreement shall not be construed against the drafter of the Agreement.

8.11    The Parties acknowledge that all Recitals and/or "WHEREAS" clauses preceding paragraph 1 are incorporated as a material part of this Agreement.

8.12    This Agreement is entered into in, and shall be governed by and construed and interpreted in accordance with the substantive laws of the State of Texas.

IN WITNESS WHEREOF, the Parties have executed this agreement as of the date(s) set forth below:


DATED:  September 18, 2019  __
By:  **/S/Dennis R. Kurz**
Attorney for Plaintiff Nicholas DeFossett

DATED:  September 18, 2019
By:  **/S/Richard R. Crow, Jr.**
Attorney for Defendant Ali Baba International Food Market, Inc.

DATED:  September 18, 2019
By:  **/S/Richard R. Crow, Jr.**
Attorney for Defendant Syran, LLC

7

# EXHIBIT A

**For purposes of this Agreement, "2010 ADAAG standards" refers to the ADA Accessibility Guidelines 28 C.F.R. Pt. 36, App. A.**

**The following modifications are to be made by Syran, LLC.:**

a. The accessible parking space and associated access aisle near the main entrance shall be modified to have its slope and cross-slope brought into compliance with section 502.4 of the 2010 ADAAG which are currently not level.  All accessible parking spaces shall comply with section 502 of the 2010 ADAAG standards, except it is agreed it is not readily achievable to modify the surface slope of the accessible parking space and associated access aisle so it has a maximum surface slope of 1:48.  As a readily achievable alternative, it shall be permitted to have an accessible parking space and associated access aisle with a maximum surface slope of 3%.
b. Defendant shall modify the same accessible parking space(s) discussed in subsection (a) above to correct the now-existing excessive vertical rises to bring them into compliance with section(s) 303.2 and 502.4 of the 2010 ADAAG standards.
c. Defendant shall modify the same accessible parking space(s) discussed in subsection(s) (a) and (b) above to bring them in compliance with section 502.3 of the 2010 ADAAG standards regarding to properly marked access aisles.
d. The accessible parking space near the main entrance shall be modified so that its identification sign is brought into compliance with section 502.6 of the 2010 ADAAG such that it is at least sixty (60) inches from the floor.
e. The accessible parking space on the southern end of the Property shall be brought into compliance with the provisions cited in subsection (a) above such that the now existing slope in excess of 1:48 shall be specifically modified to comply with section 502.4 of the 2010 ADAAG standards.
f. The access aisle on the southern end of the Property shall be sufficiently widened such that it is brought into compliance with section 502.3.1 of the 2010 ADAAG standards.
g. The accessible parking space on the southern end of the Property shall be properly marked such that it is brought into compliance with section 502.2 of the 2010 ADAAG standards.
h. The access aisle on the southern end of the Property shall be modified such that its excessive slope is brought into compliance with section 502.4 of the 2010 ADAAG, as well as with the generally cited provisions in subsection (a) above.
i. The access aisle on the southern end of the Property shall be modified such that the now existing column obstructing the aisle is brought into

compliance with section 502.4 of the 2010 ADAAG, as well as the generally cited provisions in subsection (a) above.
j. The excessive vertical rise along the accessible route or path on the southern end of the Property shall be modified to be brought into compliance with section 303.2 of the 2010 ADAAG standards. This now existing violation is located on route from the southern accessible parking space to the closest accessible ramp. Any vertical rises exceeding 1/2 inch in height along the accessible route within the Property shall be removed/flattened to a maximum height of ¼ inch. Vertical rises exceeding 1/4 inch in height but not exceeding 1/2 inch shall be beveled at a maximum slope of 1:2.
k. The accessible ramp leading from the accessible parking space to the accessible entrances on the southern end of the Property has a now existing slope exceeding 1:12 which shall be brought into compliance with sections 405.2 of the 2010 ADAAG. All ramps providing an accessible route shall comply with either section 405 or 406 of the 2010 ADAAG Standards. However, if it is not technically feasible to provide a maximum surface slope for the ramp of 1:12, after providing Plaintiff's counsel with notice of such infeasibility, as a readily achievable alternative, the maximum surface slope of that particular ramp shall be permitted to be 1:10.
l. The access ramp on the southern end of the Property has a now existing excessive vertical rise which shall be brought into compliance with section(s) 303.2 and 405.4 f the 2010 ADAAG, as well as any sections mentioned in subsection (k) of this Agreement.
m. The access ramp on the southern end of the Property shall be modified to correct the slope of the now existing side flares which have a slope of greater than 1:10 in violation of section 406.3 of the 2010 ADAAG standards.
n. The walking surfaces of the accessible route inside the Property shall be modified from their now existing slope in excess of 1:20 to be brought into compliance with section(s) 403.3 and 405.8 of the 2010 ADAAG. It is agreed it is not readily achievable to modify the surface slope of the access route so it does not exceed 1:20. As a readily achievable alternative, the surface slope of the access route may be allowed to exceed 1:20, however, if the total vertical rise from the beginning of the sloped surface to the end of the sloped surface exceeds six inches, hand rails in compliance with section 505 of the 2010 ADAAG Standards shall be installed for the entire length of the particular sloped surface.
o. The interior shall have walking surfaces of at least 36 (thirty six) in clear width and be clear of any objects potentially blocking the accessible route and otherwise be brought into compliance with section 403.5.1 of the 2010 ADAAG standards.

**The following modifications are to be made by Ali Baba International Food Market, Inc.:**

a. All sales and service counters, including the deli counter, must be modified to be in compliance with section 904.4 of the 2010 ADAAG standards. It is agreed it is not readily achievable to modify the counter where goods and services are transacted to fully comply with section 904.4 of the 2010 ADAAG standards. As a readily achievable alternative, a sign shall be posted in a visible area on or about the counter where financial transactions occur stating, "Assistance Available" and containing the International Symbol of Accessibility. Moreover, a clipboard shall be made available to disabled patrons.
    - In the alternative to a sign and clipboard, a hinged drop-down counter may be installed. This counter shall be placed at the proper height and utilize the proper dimensions in compliance with section 904 of the 2010 ADAAG standards. When the drop-down counter is folded up, a sign shall be affixed in a visible location which contains the International Symbol of Accessibility.
b. Operable parts of the door hardware to the accessible restroom and restroom stall shall be 34 inches minimum and 48 inches maximum above the finish floor or ground in compliance with section 404.2.7 of the 2010 ADAAG standards.
c. Coat hooks in the restroom shall have a maximum height of 48 inches above the finished floor.
d. Controls for the faucets of the sink shall comply with section 309.4 of the 2010 ADAAG standards such that it not requires pinching and turning of the wrists.
e. The height of the mirror shall be modified, so the bottom edge of the reflective surface of the mirror has a maximum height of 40 inches above the finished floor in compliance with section 603.3 of the 2010 ADAAG standards.
f. The pipes on the sinks shall be insulated to protect against contact in compliance with section 606.5 of the 2010 ADAAG Standards.
g. Grab bars shall be installed adjacent to the accessible toilets in the restroom and the grab bars shall comply with section 609 of the 2010 ADAAG standards and shall be configured in a manner consistent with section 604.5 of the 2010 ADAAG standards.
h. The door to the restroom shall be modified, so it has adequate maneuvering clearance in compliance with section 404.2.4 of the 2010 ADAAG Standards. Often, this is accomplished by switching the hinge side of the door and changing it from a pull to a push.
    - If the cost of modifying the door to the restroom to provide adequate maneuvering clearance exceeds $4,000.00 or is not technically feasible, after providing Plaintiff's counsel with notice of such cost or infeasibility, it is agreed it is not readily achievable to modify the door to the restroom to provide adequate and proper maneuvering clearance in compliance with section 404.2.4 of the 2010 ADAAG

        standards. As a readily achievable alternative, Defendant shall install a push-button automatic door opener to access the restroom.

i. The restroom door hardware shall be modified to comply with section 404.2.7 of the 2010 ADAAG standards.
j. The height of the coat hook in the accessible restroom stall shall be modified to a maximum height of 48 inches from the finished floor or to otherwise be brought into compliance with section 308.2.1 of the 2010 ADAAG.
k. The controls on the faucets shall be modified so as not to require pinching or turning of the wrists or to otherwise be brought into compliance with section 309.4 of the 2010 ADAAG standards.
l. The height of the mirror in the bathroom shall be modified so as not to exceed the maximum height permitted by section 603.3 of the 2010 ADAAG standards.
m. The lavatories and/or sinks in the restrooms shall be modified so as to correct the now existing condition of exposed pipes and surfaces which are not insulated or configured to protect against contact or otherwise be brought into compliance with section 606.5 of the 2010 ADAAG standards.
n. Grab bars/handrails shall be installed adjacent to the commode in compliance with section 604.5 of the 2010 ADAAG standards.
o. The door exiting the restroom shall be modified so as to provide a minimum maneuvering clearance which is now obstructed due to the proximity of the door hardware to the adjacent wall and restroom sink or to otherwise be brought into compliance with section 404.2.4 of the 2010 ADAAG standards.